UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LYNETTE P.,                                    )
                                               )
    Plaintiff                                  )
                                               )
v.                                             )     1:17-cv-00311-JDL
                                               )
SOCIAL SECURITY ADMINISTRATION                 )
ACTING COMMISSIONER,                           )
                                               )
    Defendant                                  )

## REPORT AND RECOMMENDED DECISION
## ON PLAINTIFF'S STATEMENT OF ERRORS

On Plaintiff Lynette P.'s application for supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### The Administrative Findings

The Commissioner's final decision is the June 17, 2016, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 8-2.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§

---

[1] Because the Appeals Council found no reason to review that decision, the Acting Commissioner's final decision is the ALJ's decision.

404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of post-traumatic stress disorder, depression, alcohol and opiate dependence, degenerative disc disease, sacroiliitis, chronic obstructive pulmonary disease, and coronary artery disease. (ALJ Decision at 3, ¶¶ 2 – 3, R. 15 – 16.) In the ALJ's assessment, while the impairments restrict Plaintiff's work capacity, Plaintiff has the residual functional capacity (RFC) to perform light work. As determined by the ALJ, Plaintiff can perform simple, routine tasks for 2 hour intervals, but cannot negotiate ropes, ladders, or scaffolds; may only occasionally crawl, stoop, kneel, or crouch; must avoid concentrated exposure to cold and wet environments; cannot remember, understand, or carry out detailed instructions; and may only occasionally interact with the public in the work setting. (*Id.* at 6, ¶ 4, R. 18.)

Given the RFC assessment, as well as Plaintiff's age and vocational background, and with the aid of vocational expert testimony, the ALJ determined that Plaintiff can perform substantial gainful activity in such representative occupations as package sorter, collator operator, and laundry sorter. (*Id.* at 13 – 14, ¶ 9, R. 25 – 26.) Accordingly, the ALJ found Plaintiff was not disabled under the Social Security Act for the period commencing September 25, 2013, the date of Plaintiff's SSI application, through the date of decision. (*Id.* at 14, ¶ 10, R. 26.)

## Standard of Review

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76

F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff challenges the ALJ's finding regarding her mental RFC for social interaction. Plaintiff argues that the ALJ's RFC finding regarding Plaintiff's ability to interact with members of the public and with supervisors and coworkers is not supported by substantial evidence. The ALJ limited Plaintiff to "occasional" interaction with the public, and found that Plaintiff was not limited in her ability to interact with supervisors and coworkers.

Because at the time of hearing Plaintiff had not received any counseling for more than one year, (Hr'g Tran. at 5 – 6, ECF No. 8-2, R. 36 – 37), the ALJ referred Plaintiff to a consultative examining psychologist, Peter Ippoliti, Ph.D. (Ex. 17F, ECF No. 8 – 9, R. 786 – 793.) Using a checkbox assessment form approved by the Social Security Administration, Dr. Ippoliti provided his opinion regarding Plaintiff's mental RFC. Dr. Ippoliti assessed Plaintiff as markedly limited in all areas associated with social interaction in the workplace. (R. 792.) Beneath the checkboxes, the form asks the examiner to identify "the factors (e.g., the particular medical signs, laboratory findings, or other factors described above) that support your assessment." Dr. Ippoliti left the space blank. However, in support of his narrative

3

finding that Plaintiff "is likely to be reactive and defensive, possibly misconstruing the behavior of others," Dr. Ippoliti pointed to his consultative evaluation report. (*Id.*) In the portion of his report labeled Psychological Source Statement, Dr. Ippoliti observed that Plaintiff appeared to be experiencing symptoms associated with trauma history and severe situational psychosocial stressors, including homelessness and lack of treatment services. Dr. Ippoliti found Plaintiff to be a person likely to experience cognitive difficulty, particularly in relation to abstract reasoning, problem-solving, and memory. Dr. Ippoliti believed it likely that Plaintiff would have significant difficulty meeting any of the social demands of work, due to "reactivity to others, defensiveness and negativistic attitude," and "cognitive issues." (R. 789 – 90.)

The ALJ discounted Dr. Ippoliti's assessment concerning supervisors and coworkers in part because Dr. Ippoliti saw Plaintiff only once, and, in the ALJ's view, Dr. Ippoliti's findings regarding Plaintiff's limitations were not fully supported by the record. (R. 23 – 24.) As to social interaction, the ALJ reasoned that marked limitations were not evident given Plaintiff's ability to maintain friendships and her ability to interact appropriately with medical professionals. (R. 24.) Additionally, the ALJ concluded that the state agency experts, Dr. Leigh Haskell, Ph.D. (Ex. B2A, ECF No. 8-3, R. 90), and Mary Burkhart, Ph.D. (Ex. B5A, ECF No. 8-3, R. 108), offered more reliable assessments of Plaintiff's functional capacity for social interaction in the workplace. (*Id.*)

According to Dr. Haskell, who reviewed the record in connection with the agency's initial denial of benefits in December 2013, Plaintiff is markedly limited in the ability to interact with the general public, moderately limited in the ability to accept instructions and

4

respond appropriately to criticism from supervisors, not significantly limited in the ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, and not significantly limited in the ability to maintain socially appropriate behavior. (R. 90.) In support of the assessment, Dr. Haskell offered the following narrative:

> She can interact adequately with supervisors and coworkers, but not with the public. She reports that she does not have difficulty getting along with others, including authority figures. She reports some social isolation. She attends appointments with multiple providers and interacts appropriately. She reports that she socializes daily on the phone or in person. She uses public transportation.

*Id.* Dr. Burkhart, who reviewed the record in July 2014 in connection with the agency's review of Plaintiff's reconsideration request, reiterated Dr. Haskell's findings. (R. 108.)

Plaintiff argues that Dr. Ippoliti's examination opinion should have been afforded significant weight and that the ALJ, in failing to assign the opinion significant weight, judged matters entrusted to the medical experts. Defendant contends the ALJ's reasoning in discounting Dr. Ippoliti's assessment of Plaintiff's social interaction ability is sound, and that the ALJ did not judge matters reserved to the experts.

All three experts ruled out public interaction. The ALJ thus erred when he found that Plaintiff can perform work that entails "occasional" interaction with the public. The ALJ's error, however, does not require a different result because, as Defendant argues, the representative occupations identified by the vocational expert all have the designation "People: 8 – Taking Instructions – Helping," and none is defined in a way that suggests a need for public interaction. (Defendant's Response at 8, ECF No. 17.)

At step 5 of the evaluation process, the burden shifts to the Commissioner to establish

that there are jobs the claimant can perform that exist in the national economy in significant numbers, giving particular attention to the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1), 416.920(a)(4)(v), (g)(1); *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982). This burden is typically addressed through a combined reliance on the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and the testimony of a vocational expert, who is asked to consider one or more hypothetical RFC findings. *Goodermote*, 690 F.2d at 7; *Arocho v. Sec'y of HHS*, 670 F.2d 374, 375 (1st Cir. 1982).

This Court has held that a Dictionary of Occupational Titles job definition that includes the designation "People: 8—Taking Instructions—Helping," and does not otherwise mention public interaction will support a step 5 determination for a claimant capable of handling "usual work situations not involving the public," provided that the job exists in significant numbers in the national economy. *Gleason v. Colvin*, No. 1:15-cv-00012-NT, 2015 WL 7013661, at *5 (Oct. 15, 2015), *adopted*, 2015 WL 7012739 (D. Me. Nov. 12, 2015).[2] Because the occupations identified by the ALJ at step 5 of the sequential evaluation process are all coded in the Dictionary of Occupational Titles as jobs that do not require public interaction, the ALJ's failure to provide the vocational expert with a hypothetical that precluded public interaction is harmless error, and the ALJ's step 5 determination is supported by substantial evidence.[3]

---

[2] See Dictionary of Occupational Titles (4th ed., Rev. 1991) ("Parts of the Occupational Definition"), 1991 WL 645965, available at https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTPARTS.HTM (last visiting May 14, 2018).

[3] The jobs and their codes are as follows: package sorter (DOT # 222.687-022), collator operator (DOT #

The principal issue in the case, therefore, is whether the ALJ's finding that Plaintiff is able to interact appropriately with supervisors and co-workers in the context of simple work demands is supported by substantial evidence on the record. Drs. Haskell and Burkhart, while concluding that Plaintiff was moderately limited in her ability to interact with supervisors and co-workers, cited Plaintiff's ability to interact with medical providers and her self-report of social interactions and use of public transportation as reliable evidence to support the conclusion that Plaintiff could interact with supervisors and co-workers in a workplace where she performed only "simple" tasks.[4] (R. 89, 108.)

The ALJ reached the same conclusion. Specifically, the ALJ pointed to Plaintiff's ability to maintain friendships, communicate effectively with others (notably care providers), the lack of any report in the treatment records of an impairment related to speech or communication, and Plaintiff's ability to use public transportation when necessary to support his conclusion. In the ALJ's view, Plaintiff's limitation in social interaction is more appropriately deemed "moderate," with a capacity for social interaction with supervisors and co-workers, rather than marked, without such capacity.[5] (R. 23 – 24.)

---

208.685-010), and laundry sorter (DOT # 361.687-014). Each job is coded with the "People:8" designation (the fifth digit in the DOT code). Furthermore, the job definitions do not suggest the worker would be required to interact with the public.

[4] Plaintiff argues the opinions of Drs. Haskell and Burkhart do not constitute substantial evidence because they found a moderate degree of social limitation, yet failed to assess any actual limitation in their RFC assessments. (Statement of Errors at 6.) However, an assessment of a moderate degree of social impairment is not inconsistent with an assessment that the claimant can interact sufficiently in the workplace for purposes of simple work. *See*, *e.g*., *Newcomb v. Colvin*, No. 2:15-cv-00463-DBH, 2016 WL 3962843, at *6 (D. Me. July 22, 2016), report and recommendation adopted, 2016 WL 4250259 (D. Me. Aug. 10, 2016)

[5] The ALJ conducted a thorough review of the record, including the notation of a psychiatric evaluation signed by Donna Huff, NP, on October 31, 2013. In her report, NP Huff noted a number of Plaintiff's challenges, including Plaintiff's report of "marked or persistent fear in social or performance situations when exposed to unfamiliar people or possible scrutiny." (Ex. 12F at 30, ECF No. 8-8, R. 463.) Neither NP Huff, nor anyone

7

"[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (citations omitted). Given the issues in this case, the ALJ's decision to place great weight on the mental RFC opinions offered by Drs. Haskell and Burkhart was not unreasonable. Drs. Haskell and Burkhart based their opinions on a longitudinal record of counseling sessions and medication management, and they offered a reasonable assessment of Plaintiff's capacity for social interaction in a vocational setting.[6] While Dr. Ippoliti identified what he considered to be more severe symptoms that would preclude interaction with supervisors and coworkers, his assessment was based on a single examination, and that examination followed an almost two-year period in which Plaintiff, according to the ALJ, elected not to obtain any mental health treatment, even though the services of her long-time provider were available to her.

The ALJ also conducted a hearing at which he had the opportunity to assess Plaintiff's responses to questions designed to probe the extent of her limitations. The ALJ determined that Plaintiff was capable of communicating effectively with others, in part based on her maintenance of longstanding friendships, and in part based on her capability to communicate

---

in her practice, however, offered a functional capacity assessment or analysis.

[6] In her function report completed on June 5, 2014, Plaintiff suggested that she is able to get along with authority figures, self-assessing her ability in this regard as "fine when I have to." (Ex. 9E, R. 251.)

effectively[7] with her treatment providers. "The credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Sec'y of HHS*, 829 F.2d 192, 195 (1st Cir. 1987).

A review of the record thus reveals that the ALJ's decision is supported by substantial evidence, and that the ALJ did not misapply the law or adjudge matters that are entrusted to experts. Plaintiff, therefore, cannot prevail on her challenge to the ALJ's determination regarding Plaintiff's ability to interact with supervisors and co-workers. To the extent the ALJ erred by not including greater restrictions on Plaintiff's ability to work with the public, the error is harmless insofar as the available jobs in the economy identified by the vocational expert for a person with Plaintiff's limitations do not require interaction with the public. Accordingly, Plaintiff has failed to establish that the ALJ erred in his determination that Plaintiff is not disabled for the claimed period.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being

---

[7] Providers and a consulting examiner have noted that Plaintiff is "pleasant" (R. 306), "pleasant [and] articulate" (R. 372), "Cooperative, Easily Engageable, Pleasant" with good eye contact (R. 440), and "polite" and "calm" with clear speech (R. 777).

9

served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison<br>U.S. Magistrate Judge

Dated this 15th day of May, 2018.